## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| STACY SINGLETON, INDIVIDUALLY, AND AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF RICHARD AJENE HIPOLITO, | § § § § § § | |
| **Plaintiff,** | § § | |
| VS. | § § | CIVIL ACTION NO. 4:23-cv-03141 |
| HARRIS COUNTY, TEXAS, HARRIS COUNTY SHERIFF ED GONZALEZ, DEPUTY J. VILLARREAL, DEPUTY C. RUSSELL, UNKNOWN HARRIS COUNTY, TEXAS EMPLOYEES, THE CITY OF HIGHLANDS, TEXAS, THE CITY OF HIGHLANDS FIRE DEPARTMENT AND UNKNOWN CITY OF HIGHLANDS FIRE DEPARTMENT EMS PERSONNEL | § § § § § § § § § § § § § § | |
| **Defendants.** | § | JURY DEMAND REQUESTED |

### PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Comes Now STACY SINGLETON, Individually and as the Personal Representative of the ESTATE of RICHARD AJENE HIPOLITO, Deceased, who makes and files this First Amended Complaint and Request for Jury Demand, and in support of her causes of actions, Plaintiff alleges the following:

1

# I.
## NATURE OF THE CASE

1.      This is a civil action arising from the death of Richard Ajene Hipolito ("Hipolito") while in the custody of the Harris County Sheriff's Office ("HCSO"). Hipolito was arrested and injected with the powerful drug ketamine. Hipolito went into medical distress and became nonresponsive. He was transported to the hospital. Hipolito never regained consciousness and died four days later.  Plaintiff brings this wrongful death and survival suit against the Defendants, state actors, for the deprivation of Hipolito's constitutional rights, liberties, and freedom to be free of excessive and unreasonable use of force pursuant to the Fourth and Fourteenth Amendments of Constitution of the United States and other state law claims.

# II.
## JURISDICTION AND VENUE

2.      The Court has jurisdiction to hear Plaintiff's claims, and this Court is the proper venue to have those claims heard. The Court has federal question jurisdiction pursuant to 28 U.S.C. §1331, because this is a civil action arising under the Constitution and the laws of the United States. The Court also has original jurisdiction pursuant to 28 U.S.C. §1343, because Plaintiff seeks redress for the deprivation of, and to recover damages for the violation of, Hipolito's civil rights. Also, the Court has supplemental jurisdiction to hear Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367.

3.      The subject matter in controversy is within the jurisdictional limits of this Court.

4.     Venue is proper in this Court, under 28 U.S.C. § 1391(b), because the incident at issue took place in Harris County, Texas within the United States Southern District of Texas.

### III.
### PARTIES

5.     Plaintiff, STACY SINGLETON, Individually and as the Personal Representative of the ESTATE of RICHARD AJENE HIPOLITO, is an individual who is a resident of Harris County, Texas.

6.     Defendant, HARRIS COUNTY, TEXAS is a local governmental entity existing within the U.S. Southern District of Texas and may be served with process by serving HARRIS COUNTY, Harris County Judge Lina Hidalgo at 1001 Preston, Ste. 911, Houston Texas 77002 and or anywhere Defendant may be found. Service of said Defendant as described above can be affected by certified mail, return receipt requested and or personal delivery.

7.     SHERIFF ED GONZALEZ is an individual who is the Sheriff of Harris County, Texas. He may be served with process at his place of business at **Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002**, or wherever he may be found.  Sheriff Gonzalez is sued in his official and individual capacity.

8.     Deputy J. VILLARREAL and Deputy C. RUSSELL (the "Deputy Defendants") are deputies with the HCSO, who at all times relevant to this suit, were acting within the course and scope of their employment with the HCSO. The Deputy Defendants are sued in both their individual and official capacities. Deputy J. VILLARREAL and

Deputy C. RUSSELL may be served with process at the HCSO located at 14350 Wallisville Rd, Houston, TX 77049 or wherever they may be found.

9.      UNKNOWN HARRIS COUNTY, TEXAS EMPLOYEES ("Unknown Harris County, Texas Defendants") are employees of the Harris County Sheriff's Department or Harris County, Texas that were present at the scene when Hipolito was detained on August 20, 2021. Plaintiffs are unsure of the identity of all of the individuals with Harris County that interacted with Hipolito at the scene or oversaw his detention. Plaintiffs believe discovery would reveal any additional individual Defendants' identities and at such time, Plaintiffs will seek leave to amend their Complaint to add the names of the unknown individual defendants.

10.      The CITY OF HIGHLANDS, TEXAS is a municipality and or unincorporated part of Harris County that may be served with process by serving the City Manager, **Mark Taylor at Harris County W.C.I.D. No. 1, 125 San Jacinto St., Highlands, TX 77562** or wherever the city manager may be found.

11.      The CITY OF HIGHLANDS FIRE DEPARTMENT is a municipal entity and/or unincorporated part of Harris County that may be served with process by serving the Fire Chief, **Harvey Little at 123 San Jacinto St., Highlands, TX 77562** or wherever the city manager may be found.

12.      UNKNOWN HIGHLANDS FIRE DEPARTMENT EMS PERSONNEL ("Highlands Fire Department EMS" that are employed by the Highlands Fire Department as emergency medical service responders and were present at the scene when the Harris County Sheriff's Office deputies detained Hipolito on August 20, 2021. Plaintiffs are

unsure of the identity of the individual emergency medical service responders that attended to Hipolito on August 20, 2021. Plaintiffs believe discovery would reveal the individual Defendants' identities and at such time, Plaintiffs will seek leave to amend the Complaint to add the names of the unknown individual defendants.

**IV.**
**FACTS**

13.     On August 20, 2021, a 9-1-1 call was made around 10:30 a.m. to the HCSO to report a suspicious male running toward cars and running into the street in the area of East Wallisville Rd. and North Main Street in Harris County, Texas. Defendant Deputy J. Villarreal responded to the call. He observed a male wearing the same clothes as described in the 9-1-1 call and detained him. The male was Hipolito. Defendant Deputy C. Russell arrived at the scene and told Deputy Villarreal that a nearby apartment resident claimed that Hipolito had just forced his way into her apartment and then fled the scene. The claimant was familiar with Hipolito as an acquaintance of her husband. She said she believed Hipolito was under the influence of drugs.

14.     The City of Highlands Fire Department and, specifically, the Highlands Fire Department EMS were also dispatched to the scene. While Hipolito was being taken into custody or after he was taken into custody, HCSO officers or City of Highlands Fire Department EMS personnel gave the order and injected the drug ketamine into Hipolito and he went into medical distress.

15.     Hipolito was taken by ambulance to an emergency room. He was reported to be unresponsive when he arrived. He was moved to the ICU on August 21, 2021. He was

transferred to Methodist Hospital in the Texas Medical Center on August 24, 2021, where he was declared dead hours later. Hipolito was 37 years old.

16.    An autopsy was performed and methamphetamine and ketamine were found in Hipolito's system. The ketamine was injected into Hipolito against his will by Deputy Villarreal, Deputy Russell, another unknown employee of Harris County, or an individual employed with the Highlands Fire Department EMS.

17.    Although there had been reports that Hipolito was acting in a manner consistent with drug use, the Defendants did not know what drug or drugs, how much, or when Hipolito had taken any drug prior to their encounter. The Defendants did not know Hipolito's medical history, whether he was on prescription medications, or whether he would have an adverse reaction to the drug ketamine.

18.    Ketamine is a powerful sedative. In low doses, it can be used to treat acute pain, while at higher doses it becomes a dissociative anesthetic. Not only does it act as a sedative but a person's reality—feelings, thoughts and understanding of what is occurring—is also disconnected. In recent years, law enforcement has begun using the drug to sedate combative detainees. However, there has not been extensive research into its use by law enforcement and its effects on detainees. Many physicians question whether ketamine should be used by law enforcement at all because of the risks involved. Ketamine may be dangerous to people who suffer liver failure and it can affect blood pressure, cause rapid heart rate or an irregular heartbeat, prompt seizures or muscle twitching, and induce extreme anxiety or hallucinations.

19.     Ketamine is most commonly used by veterinarians on animals and as an anesthetic in some surgical procedures on people.

20.     Hipolito was reported to have been detained without incident. Despite a public information request for the deputies' body camera video of the detention or any other information related to Hipolito's arrest, the HCSO has refused to produce the information, citing the "law enforcement exception" under Tex. Govt' Code §552.108(a)(1), claiming the information that is being withheld deals with the detection, investigation, or prosecution of a crime and the release of such information would interfere with the detection, investigation or prosecution of a crime. The crime was stated to be Hipolito's criminal trespass charge. Since Hipolito is deceased, it is difficult to understand how there is an ongoing investigation into the charge. After asking how there was an ongoing investigation since Hipolito is deceased, a subsequent request for information was made and the HCSO again refuses to produce the information, citing the "law enforcement exception" under Tex. Govt' Code §552.108(a)(2), claiming that the charge against Hipolito was dismissed due to his death and that because the investigation "did not result in conviction or deferred adjudication," the information "should be excepted from public disclosure." The HCSO has requested a ruling from from the Texas Attorney General's Office.

21.     Nevertheless, the HCSO's refusal to produce the public information has prevented Plaintiffs from discovering additional details as to Hipolito's detention and ultimate death as well as the identities of all of the Harris County and Highlands Fire Department EMS personnel that were present when Hipolito was detained.

22.     All Defendants had actual notice of the circumstances surrounding the death of Hipolito and Harris County has received written notice as required by statute. Actual notice is imputed to all of the governmental entities because one or more of them are aware of facts and circumstances surrounding the incident sufficient to put them on inquiry that, if pursued, it would reveal its alleged or possible fault producing or contributing to the injury. *City of San Angelo v. Smith, 69 S.W. 3d at 307; Dallas Fort-Worth Int'l Airport Bd. V. Ryan, 52 S.W. 3d 426, 428-429 (Tex. App.-Fort Worth 2001, no pet.)*

23.     The facts in this case show that the governmental entities have actual notice to the extent that a prudent entity could ascertain its potential liability stemming from this incident, either by conducting a further investigation or because of its obvious role in contributing to the incident. *City of Angelo v. Smith, 69 S.W. 3d at 307.* In this case, the HCSO employees including Deputy Villarreal, Deputy Russell, and City of Highland Fire Department EMS personnel who arrived on the scene and made the incident report is imputed to their respective governmental entities who employ them. Hipolito was injected with ketamine by HCSO employees and/or the City of Highlands EMS personnel. The facts as outlined above section IV numbers 16-25 clearly state that Hipolito was unconscious when he left the scene and arrived at the hospital. Shortly thereafter, he was pronounced medically brain dead by hospital doctors.

**V.**
**CAUSE OF ACTION AGAINST HARRIS COUNTY,**
**SHERIFF ED GONZALEZ, THE DEPUTY DEFENDANTS AND UNKNOWN**
**HARRIS COUNTY EMPLOYEES IN THEIR OFFICIAL CAPACITIES**

24.     Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

25.     To state a cause of action under 42 U.S.C. § 1983, a plaintiff must show that: (1) the conduct complained of was committed by a person acting under color of law; and (2) the conduct deprived a person of some right, privilege or immunity secured by the Constitution or federal law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662 (1986). The Deputy Defendants and Unknown Harris County Employees were acting under color of law when they responded to a 9-1-1 call regarding a suspicious male and detained Hipolito. The Deputy Defendants and Unknown Harris County Employees' actions in injecting ketamine into Hipolito or ordering others to inject ketamine into Hipolito violated his Fourth and Fourteenth Amendment rights against the use of excessive force and the deprivation of life, liberty, and property without due process of law.

26.     The claims brought against Sheriff Gonzalez, the Deputy Defendants and Unknown Harris County Employees involved in detaining Hipolito are brought in their official and individual capacities. The claims brought in their official capacities are essentially claims against Harris County.

9

**Section 1983 Claim Against Harris County.**

27.     In order to prevail on a claim against Harris County, Plaintiff must produce proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978)). The three attribution principles identified here-a policymaker, an official policy and the "moving force" of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself. *Piotrowski,* 237 F. 3d at 578.

28.     An official policy may be shown by (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom lawmakers have delegated policy-making authority or (2) a persistent, widespread practice of city officials or employees, which although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir. 1984). The Supreme Court has held that a municipal policy maker's single decision might constitute an official policy subjecting the municipality to liability. *Pembaur v. City of Cinncinati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300 (1986).  If an authorized decision maker, *i.e.,* someone with final authority under state law to establish municipal policy, adopts a particular course of action, this conduct may constitute official policy.  *Id.* at 481. The plaintiff must prove "the requisite degree of culpability and . . . a direct causal link" between the municipal action and the rights

violation. *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388 (1997).

29.     The official policymaker in this case is Sheriff Ed Gonzalez. He was the Harris County Sheriff when Hipolito was detained. Sheriff Gonzalez was the final decision maker as it relates to the conduct of Harris County deputies including their supervision, training, use of force, and treatment of persons in their custody.

30.     The official policy or practice that was the moving force behind the Deputy Defendants and Unknown Harris County Employees' violation of Hipolito's constitutional rights was the policy or the persistent, widespread practice of injecting ketamine into detainees or ordering the injection of ketamine to sedate them. The policy or practice of injecting or ordering the injection of ketamine to detainees is itself unconstitutional or alternatively, under the circumstances of Hipolito's non-violent arrest and knowledge that Hipolito may have been under the influence of drugs, unconstitutional. It amounts to a violation of his Fourth and Fourteenth Amendment rights against unreasonable and excessive use of force and the deprivation of life and liberty without due process of law.

31.     Harris County should be held liable for Sheriff Gonzalez's or another supervisor's failure to train and supervise the Deputy Defendants and Unknown Harris County employees. Defendant Harris County adopted inadequate training and supervising policy procedures and they were implemented by Sheriff Gonzalez with regard to using ketamine, knowing when to use ketamine, and injecting ketamine under the circumstances of this case, the Deputy Defendants and Unknown Harris County employees acted with deliberate indifference to Hipolito's constitutional rights, and the inadequate training and

supervising policy led the Deputy Defendants and Unknown Harris County employees directly causing Hipolito's death and Plaintiff's injuries. At the time of Hipolito's death, it was well known in the medical and law enforcement community that ketamine was risky and dangerous to people who suffer from liver failure, and it can affect blood pressure, cause rapid heart rate or an irregular heartbeat, prompt seizures or muscle twitching and induce extreme anxiety and hallucinations.

32.     Harris County is liable to Plaintiff for such policies and practices or failure to train and supervise because they were the moving force behind the Deputy Defendants and Unknown Harris County Employees' violation of Hipolito's constitutional rights and death. Specifically, Defendant Harris County by and through its deputies and employees violated Hipolito's constitutional due process right and right to be free from unreasonable and excessive force by:

a. causing Hipolito's death;

b. which resulted from the use of force that was clearly excessive to the need; and

c. the excessiveness of which was objectively unreasonable. *Rockwell v. Brown*, 664 F. 3d 985, 991 (5th Cir. 2001).

33.     Hipolito's death was a direct result of the Deputy Defendants and Unknown Harris County Employees' actions.

**Section 1983 Claim Against the Deputy Defendants and Unknown Harris County Employees, Individually.**

34.     Plaintiff also brings her Section 1983 claim against the Deputy Defendants and Unknown Harris County Employees in their individual capacities for their roles acting under color of law in arresting Hipolito and in violating Hipolito's Fourth and Fourteenth Amendment constitutional rights by their actions as set forth above.

35.     The Deputy Defendants and Unknown Harris County Employees are not entitled to qualified immunity. The Deputy Defendants and Unknown Harris County Employees' actions violated a clearly established right under the Fourth and Fourteenth Amendments.

36.     Further, the Deputy Defendants and Unknown Harris County Employees' conduct was not objectionably reasonable in light of the clearly established law at the time of the incident. A reasonable officer would have known at the time that a non-violent detainee alleged to be under the influence of drugs should not be injected with a powerful sedative in order to calm him down and such actions would amount to a violation of Hipolito's Fourth and Fourteenth Amendment rights.

**VI.**
**CAUSES OF ACTION AGAINST THE CITY OF HIGHLANDS,**
**TEXAS, THE CITY OF HIGHLANDS FIRE DEPARTMENT**
**AND THE HIGHLANDS FIRE DEPARTMENT EMS**

37.     Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

38.     To state a cause of action under 42 U.S.C. § 1983, a plaintiff must show that: (1) the conduct complained of was committed by a person acting under color of law; and

(2) the conduct deprived a person of some right, privilege or immunity secured by the Constitution or federal law. *Parratt,* 451 U.S. at 535. The City of Highlands and the City of Highlands Fire Department EMS were acting under color of law when their personnel encountered Hipolito on August 20, 2021. The Highlands Fire Department EMS' actions in injecting ketamine to Hipolito or ordering others to inject ketamine to Hipolito violated his Fourth and Fourteenth Amendment rights against the use of excessive force and the deprivation of life, liberty, and property without due process of law.

39.     The claims brought against the Unknown Highlands Fire Department EMS personnel are brought in their official and individual capacities. A claim against the Highlands Fire Department EMS personnel in their official capacity is a claim against the City of Highlands and/or the City of Highlands Fire Department.

**Section 1983 Claim Against the City of Highlands, Texas, and the City of Highlands Fire Department.**

40.     In order to prevail on a claim against the City of Highlands and the Highlands Fire Department, Plaintiffs must produce proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski,* 237 F.3d at 576 (citing *Monell,* 436 U.S. at 694)).   The three attribution principles identified here-a policymaker, an official policy and the "moving force" of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself. *Piotrowski,* 237 F. 3d at 578.

41.     An official policy may be shown by (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom lawmakers have delegated policy-making authority or (2) a persistent, widespread practice of city officials or employees, which although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Bennett*, 735 F.2d at 862. The Supreme Court has held that a municipal policy maker's single decision might constitute an official policy subjecting the municipality to liability. *Pembaur,* 475 U.S. at 483.  If an authorized decision maker, i.e., someone with final authority under state law to establish municipal policy, adopts a particular course of action, this conduct may constitute official policy. *Id.* at 481. The plaintiff must prove "the requisite degree of culpability and . . . a direct casual link" between the municipal action and the rights violation. *Brown,* 520 U.S. at 404.

42.     The official policymaker for the City of Highlands Fire Department is Fire Chief Harvey Little and/or EMS Director Mike Jones. Both are final decision makers as it relates to the conduct of Highlands Fire Department EMS personnel including their supervision, training, use of force and treatment of persons detained by the HCSO.

43.     The official policy or practice that was the moving force behind the Highlands Fire Department EMS personnel's violation of Hipolito's constitutional rights was the policy or practice of injecting ketamine to detainees or ordering the injection of ketamine. The policy or practice of injecting or ordering the administration of ketamine to detainees is itself unconstitutional or under the circumstances of Hipolito's non-violent

arrest and allegations of drug use, unconstitutional. It amounts to a violation of his Fourth and Fourteenth Amendment rights against unreasonable and excessive use of force and the deprivation of life and liberty without due process of law.

44.     The City of Highlands and the City of Highlands Fire Department should be held liable for its chief policy makers failure to train and supervise the Highlands Fire Department EMS personnel. The City of Highlands and the City of Highlands Fire Department adopted inadequate training and supervising policy procedures with regard to using ketamine, knowing when to use ketamine and injecting ketamine under the circumstances of this case, the Highlands Fire Department EMS personnel acted with deliberate indifference, and the inadequate training and supervising policy directly caused Hipolito's death and Plaintiff's injury. At the time of Hipolito's death, it was well known in the medical and law enforcement community that ketamine was risky and dangerous to people who suffer from liver failure and it can affect blood pressure, cause rapid heart rate or an irregular heartbeat, prompt seizures or muscle twitching and induce extreme anxiety and hallucinations.

45.     The City of Highlands and the City of Highlands Fire Department are liable to Plaintiff for such policies and practices because they were the moving force behind the Highlands Fire Department EMS personnel's violation of Hipolito's constitutional rights and death. Specifically, the City of Highlands and the Highlands Fire Department by and through its EMS personnel violated Hipolito's constitutional due process right and right to be free from unreasonable and excessive force by:

a. causing Hipolito's death;

16

b. which resulted from the use of force that was clearly excessive to the need; and

c. the excessiveness of which was objectively unreasonable. *Rockwell*, 664 F. 3d at 991.

46.    Hipolito's death was a direct result of the Highlands Fire Department EMS personnel's actions. The Highlands Fire Department EMS personnel's actions and/or omissions were "objectively unreasonable" in light of the facts and circumstances confronting the deputies without regard to their underlying intention or motivation. Hipolito should not have been injecting ketamine under any circumstances but certainly not when he was taken into custody without incident. For these reasons, it was objectively unreasonable for the Highlands Fire Department EMS personnel to use any force including the injection of ketamine or ordering it to be injected into Hipolito.

## Section 1983 Claim Against the Highlands Fire Department EMS Personnel, Individually.

47.    Plaintiff also brings her Section 1983 claim against the Highlands Fire Department EMS personnel in their individual capacities for their roles acting of color of law and in violating Hipolito's Fourth and Fourteenth Amendment constitutional rights by their actions as set forth above.

48.    The Highlands Fire Department EMS personnel are not entitled to qualified immunity. The Highlands Fire Department EMS personnel's actions violated a clearly established right under the Fourth and Fourteenth Amendments.

49.    Further, the Highlands Fire Department EMS personnel's conduct was not objectionably reasonable in light of the clearly established law at the time of the incident.

A reasonable EMS or Paramedic would have known at the time that a non-violent detainee should not be injected with a powerful sedative in order to calm him down. The Highlands Fire Department EMS personnel's actions and/or omissions were "objectively unreasonable" in light of the facts and circumstances confronting the deputies without regard to their underlying intention or motivation. Hipolito should not have been injected with ketamine under any circumstances but certainly not when he was taken into custody without incident. For these reasons, it was objectively unreasonable for the Highlands Fire Department EMS personnel to use any force including the injection of ketamine or ordering it to be injected into Hipolito.

**VII.**
**CAUSE OF ACTION AGAINST SHERIFF GONZALEZ,**
**INDVIDIUALLY, FOR SECTION 1983**
**FAILURE TO SUPERVISE AND TRAIN CLAIM**

50.     Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

51.     Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *See Brown,* 520 U.S. at 403. A supervisor can be held liable under § 1983 if "(1) [s]he affirmatively participates in the acts that cause the constitutional deprivation, or (2) [s]he implements unconstitutional policies that causally result in the constitutional injury." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

18

52.     In a Section 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir.1998). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 912 (internal quotation omitted). To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small,* 325 F.3d 627, 637 (5th Cir.2003) (internal quotation omitted).

53.     The conduct of Sheriff Gonzalez constituted a failure to supervise and train the Harris County employees and the Highlands Fire Department EMS personnel in the use a of ketamine.

54.     The failure to train or supervise was a direct cause of Hipolito's death and it amounted to deliberate indifference. Sheriff Gonzalez was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed with the injection of ketamine at all but especially in the wrong circumstances could and did cause Hipolito's death. At the time of Hipolito's death, it was well known in the medical and law enforcement community that ketamine was risky and dangerous to people who suffer from liver failure and it can affect blood pressure, cause rapid heart rate or an irregular heartbeat, prompt seizures or muscle twitching and induce extreme anxiety and hallucinations.

55.     Accordingly, Sheriff Gonzalez is not entitled to qualified immunity and may be held individually liable for Hipolito's death and Plaintiff's injuries. Sheriff Gonzaez's training and supervisory actions and/or omissions were "objectively unreasonable" in light of the facts and circumstance. Hipolito should not have been injected ketamine under any circumstances but certainly not when he was taken into custody without incident. For these reasons, it was objectively unreasonable for any deputies or Highlands Fire Department EMS personnel to use any force including the injection of ketamine or ordering it to be injected into Hipolito.

## VIII.
## ATTORNEY'S FEES

58.     Plaintiff is entitled to recover attorney's fees, costs, and expert fees to enforce Hipolito's constitutional rights under 42 U.S.C. § 1988 from Defendants.

## IX.
## PUNITIVE/EXEMPLARY DAMAGES

59.     Plaintiff seeks punitive damages based the individual Defendants' reckless or callous indifference to Hipolito's constitutional rights based on the individual Defendants' subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations. Plaintiff does not request punitive/exemplary damages against Harris County, City of Highlands, the City of Highlands Fire Department, or the Individuals in their official capacities as the entities are immune from such damages.

## X.
## JURY TRIAL

60.     Plaintiff demands trial by jury on all issues triable to the jury.

## XI.
## SURVIVAL AND WRONGFUL DEATH DAMAGES

61.     As a proximate or producing cause of the Defendants' wrongful conduct, as set forth herein above, Plaintiff is entitled to recover fair and reasonable compensation for the injuries, damages, and death of Hipolito pursuant to Tex. Civ. Prac. & Rem. Code §71.021 and under the Texas Wrongful Death Act, Tex. Civ. Prac. & Rem. Code §§71.001-71.012, as follows:

    A.     Hipolito's pain and mental anguish;

    B.     the reasonable medical care and expenses incurred by Hipolito;

    C.     Hipolito's funeral expenses;

    D.     loss of advice and counsel;

    E.     loss of services,

    F.     mental anguish;

    G.     loss of companionship and society; and

    H.     loss of inheritance.

## XII.
## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment on her behalf and on behalf of Hipolito against Defendants and ask this Court, after impaneling a jury and accepting the presentation of evidence, to enter judgment in favor of Plaintiff and against Defendants and to be identified in at least the following particulars:

    A. Find that Plaintiff is the prevailing party in this case and award attorney's fees, costs, and expert fees, pursuant to federal law, as noted against Defendants;

B.  Award damages to Plaintiff for the violation of Hipolito's constitutional rights claims as set forth above;

C.  Award pre-and post-judgment interest;

D.  Award exemplary damages against the Individual Defendants;

E.  Cost of court; and

F.  Grant such other and further relief as appears reasonable and just, to which, Plaintiff shows herself entitled.

Respectfully submitted,

**THE COX PRADIA LAW FIRM, PLLC**

By: ***/s/:Troy J. Pradia***
         **Troy J. Pradia**
         TX Bar No. 24011945
         Fed. Bar ID. 30260
         2402 Rosedale Street
         Houston, Texas 77004
         T: 713.739.0402
         F: 713.752.2812
         Email: tjp@coxpradialaw.com
         **ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

**[ADD CERTIFICATE OF SERVICE BLOCK]**